S06A0449. FULTON COUNTY v. PERDUE et al.
(631 SE2d 362)

HUNSTEIN, Presiding Justice.

Appellant Fulton County appeals from an order granting appellees' motion for judgment on the pleadings and rejecting the County's constitutional challenge of OCGA § 36-31-12, the Georgia statute governing a county's collection of revenue and distribution of government services within special tax districts. For the reasons that follow, we affirm.

1. The facts of this appeal are not in dispute. Article IX, Section II, Paragraph VI of our State Constitution authorizes both the General Assembly and counties to create special tax districts and to levy and collect taxes and other fees within such special districts. In 1972, the Georgia legislature enacted, and Fulton County voters approved, a local constitutional amendment authorizing Fulton County to create special taxing and spending districts (SSDs). The Fulton County Board of Commissioners thereafter adopted a resolution creating an SSD within Fulton County comprised of all of the County's unincorporated areas, including numerous noncontiguous areas separated by incorporated municipalities. Since the creation of its SSD, Fulton County has collected taxes and other fees to pay for government services provided exclusively within its SSD. The County has not during this same time period limited the expenditure of such revenue to the area in which it was collected.

In 2005, the General Assembly enacted OCGA § 36-31-12, which imposes new requirements upon counties that have created SSDs for the provision of services to their unincorporated areas. At issue in this appeal is OCGA § 36-31-12 (b), which provides:

When a municipal corporation is created by local Act within a county which has a special district for the provision of local

> government services consisting of the unincorporated area of the county and following the creation of said municipal corporation the special district is divided into two or more noncontiguous areas, any special district taxes, fees, and assessments collected in such a noncontiguous area shall be spent to provide services in that noncontiguous area.

Pursuant to this language, Fulton County became subject to the requirements of OCGA § 36-31-12 after the incorporation of the City of Sandy Springs. Fulton County thereafter filed a declaratory judgment action arguing both that OCGA § 36-31-12 is unconstitutional and that it is inapplicable to Fulton County. Governor Sonny Perdue and the State, appellees in this appeal, filed a motion for judgment on the pleadings which the trial court granted. See OCGA § 9-11-12 (c); see also *Frady v. Irvin*, 245 Ga. 307 (5) (264 SE2d 866) (1980) (motion for judgment on pleadings proper where allegations of complaint disclose with certainty plaintiff not entitled to relief under any state of provable facts). This appeal followed.

2. Fulton County argues that OCGA § 36-31-12 (b) is not applicable to its existing SSD because that statute applies only when noncontiguous areas are first created by the incorporation of a new municipality, whereas noncontiguous areas existed in its SSD prior to Sandy Springs' incorporation. We agree with the trial court, however, that there is nothing in the language of OCGA § 36-31-12 indicating a legislative intent that it apply only to SSDs with newly created noncontiguous areas. Indeed, the General Assembly in OCGA § 36-31-12 (a) specifically acknowledged the need for OCGA § 36-31-12 (b) to be applied to SSDs with existing noncontiguous areas when it found that the creation of a municipal corporation within an SSD with existing noncontiguous areas may cause the noncontiguous areas to become "even more remote from each other," id. at (a) (2), and result in one noncontiguous area "subsidizing the provision of services in other such noncontiguous areas." Id. at (a) (3). See also id. at (e) (OCGA § 36-31-12 applicable to SSDs created pursuant to Article IX, Section II, Paragraph VI or similar districts created "under any other provision of any past or present Constitution or law"). Accordingly, the trial court correctly determined that appellees were entitled to judgment on the pleadings on this ground.

3. Fulton County further argues that the trial court erred by upholding the constitutionality of OCGA § 36-31-12 (b) as applied to the County because the statute encroaches on the County's exclusive authority, derived from a local constitutional amendment, over the expenditure of revenues collected within its SSD. See Ga. L. 1972, p. 1481. In granting judgment on the pleadings to appellees, the trial court determined that under Georgia constitutional and statutory

laws, Fulton County and the General Assembly have concurrent authority to govern the collection and expenditure of revenue collected from within SSDs. We agree.

Under our State Constitution, the General Assembly is authorized to levy and collect fees, assessments, or taxes within SSDs both by general law that directly creates the districts and by general law that requires the creation of districts under conditions specified by such general law. Ga. Const. Art. IX, Sec. II, Par. VI.[1] Fulton County argues that the General Assembly's authority to enact laws governing the collection of revenue within Fulton County's SSD was superseded by a 1972 local constitutional amendment that granted Fulton County *exclusive* authority over the administration of revenue collected in its SSD. The 1972 amendment provides, in pertinent part:

> Notwithstanding any other provision of this Constitution or the general laws of the State, the governing authority of Fulton County is authorized to divide said county into districts without regard to uniformity of area or population, for the purpose of providing to the residents of such districts any or all services which said county may now or hereafter be authorized to provide under the provisions of this Constitution or of the laws of this State. Upon the establishment of such districts the governing authority of such county is hereby authorized to levy taxes or assessments or both throughout such district or districts to defray all or part of the cost of such services, all without the necessity of uniformity of taxation between such districts; provided, however, that the said county may not exercise any such powers or provide any service inside the boundaries of any other local governments except by contract with the local governments affected unless otherwise provided by any local or special law and no existing local or special laws or provision of this Constitution is intended to be hereby repealed. The said county and the local governments therein, and any combination thereof, shall have the authority to enact ordinances and to contract with each other in pursuance of this Paragraph and for the purpose of carrying out and effectuating the powers herein conferred.

Ga. L. 1972, p. 1482, § 1.

---

[1] This same constitutional provision authorizes counties and municipalities to levy and collect such fees, assessments, or taxes by resolution or ordinance, except that no such resolution or ordinance may supersede a law enacted by the General Assembly pursuant to its authority under this provision. See id. at (c).

Considering the language of the amendment as a whole so as to determine the intent of the legislature and to give meaning to all of its parts, we hold that the 1972 amendment did not grant Fulton County exclusive authority to control the expenditure of revenue collected in its SSD. See generally *Brown v. Liberty County*, 271 Ga. 634, 635 (522 SE2d 466) (1999) (rules of construction require court to construe constitutional provision to make its parts harmonize and give sensible and intelligent effect to each part). Although the 1972 amendment grants the County authority to create SSDs and to levy and collect revenue within such districts to defray the cost of providing services therein, there is no indication that the General Assembly intended the County's authority to be exclusive and thereby eliminate the authority of the General Assembly to act in this area. Rather than a limitation on the power of the General Assembly to act regarding SSDs, the opening clause of the 1972 amendment intends a grant of concurrent authority to Fulton County. This intent is evident in the plain language of the clause that grants Fulton County the authority to create SSDs while placing no restriction or limitation on the similar authority granted the General Assembly in Article IX, Section II, Paragraph VI (a), (b).

Moreover, "[i]t has long been this Court's position that 'repeals of constitutional provisions by implication are not favored by law,' [cit.], and will occur only when the old and new provisions 'are in irreconcilable conflict, and when they cannot reasonably stand together.' Id. [Cits.]" *Copeland v. State of Ga.*, 268 Ga. 375, 376 (1) (490 SE2d 68) (1997). It would thus be inappropriate in this case, in the absence of any conflict between the General Assembly's authority under Article IX, Section II, Paragraph VI and that granted to Fulton County in the 1972 amendment, to rule that the local amendment limited or otherwise supplanted the General Assembly's long-standing authority in this area.

Accordingly, we conclude, as did the trial court, that it was within the constitutional authority of the General Assembly to enact OCGA § 36-31-12 (b), a general law providing for the collection and expenditure of revenue within SSDs. It follows that appellees were entitled to judgment on the pleadings as a matter of law.

*Judgment affirmed. Sears, C. J., Benham, Carley, Thompson, and Hines, JJ., and Judge Arch W. McGarity concur. Melton, J., not participating.*

DECIDED JUNE 12, 2006 —
RECONSIDERATION DENIED JULY 17, 2006.

*Willie J. Lovett, Jr., Larry W. Ramsey, Jr., Sudevi N. Ghosh, Overtis H. Brantley*, for appellant.

*Thurbert E. Baker, Attorney General, Stefan E. Ritter, Chad D. Franks, Lourdes G. De Mendoza, Assistant Attorneys General*, for appellees.